# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| THERESA A. MILLSAP, | : | Case No. 3:19-cv-197 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | District Judge Walter H. Rice |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.     Introduction

Plaintiff Theresa A. Millsap brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Medicare Coverage.  She applied for benefits on February 12, 2013, asserting that she could no longer work a substantial paid job.  Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that she was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act.

When the Appeals Council denied her request for review, Plaintiff filed a previous case in this Court.  United States District Judge Walter H. Rice—adopting the Report and Recommendations of United States Magistrate Judge Michael J. Newman—reversed the non-disability decision and remanded the matter to the Commissioner.  *Millsap v.*

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

*Comm'r of Soc. Sec.*, 3:16-cv-103, 2017 WL 489745 (S.D. Ohio Feb. 7, 2017), *Report and Recommendations adopted*, 2017 WL 749008 (S.D. Ohio Feb. 24, 2017).  Upon remand, after a second hearing, ALJ Kenyon determined that Plaintiff was not under a disability and was therefore not eligible for benefits.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), and the administrative record (Doc. #7).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings.  The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II.  **Background**

Plaintiff asserts that she has been under a disability since September 1, 2004.  She was forty-three years old at that time and was therefore considered a "younger person" under Social Security Regulations.  *See* 20 C.F.R. § 404.1563(c).  She has a high school education.  *See id.* § 404.1564(b)(4).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #7, *PageID* #s 1889-1906); Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #12); and Plaintiff's Reply (Doc. #13).  Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

III.    **Standard of Review**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1).  The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon.  42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

In order to be eligible for Disability Insurance Benefits, an individual must prove that her disability began while she had disability insured status.  *See* 20 C.F.R. §§ 404.130, 404.131 ("To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled.").

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…."  *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits.  He did so by considering each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  But, before addressing the steps, the ALJ noted that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2009 (for cash-benefit purposes) and through March 31, 2010 (for Medicare eligibility purpose).  (Doc. #7, *PageID* #1893).  At Step

One, he found that Plaintiff has not engaged in substantial gainful employment since her alleged disability onset date, September 1, 2004, through either of her dates last insured.[2] *Id.*  The ALJ determined at Step Two that Plaintiff had five severe impairments:  chronic obstructive pulmonary disease, degenerative disc disease of the lumbosacral spine, degenerative joint disease of the knees, carpal tunnel syndrome, and depressive disorder. *Id.* at 1894.  Although not listed with Plaintiff's other severe impairments, the ALJ found that obesity was a severe impairment.  *Id.* at 1895.  At Step Three, he found that she did not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 1896.  Proceeding to Step Four, the ALJ determined that Plaintiff's residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002), consisted of

> sedentary work … subject to the following additional limitations:  (1) no more than occasional crouching, crawling, kneeling, stooping, balancing, or climbing of ramps or stairs; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no more than occasional overhead reaching; (5) no concentrated exposure to temperature extremes or respiratory irritants; (6) no more than frequent use of the hands for handling or fingering; (7) limited to performing unskilled, simple, repetitive tasks.

(Doc. #7, *PageID* #1897).  Additionally, she was unable to perform any of her past relevant work.  *Id.* at 1904.  Finally, at Step Five, he found that she could have performed

---

[2] At each of the remaining steps, the ALJ's conclusions apply solely to the time between her alleged onset date and her dates last insured.

a significant number of jobs that existed in the national economy.  *Id.* at 1904.  These

main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-

qualifying disability.  *Id.* at 1906.

**V.**     **Discussion**

Plaintiff contends that the ALJ reversibly erred in evaluating her symptom

severity.  (Doc. #9, *PageID* #3842).  In years past, this assessment would have delved

into the murky realms of credibility.  *E.g., Rogers*, 486 F.3d 246-49; *cf. Carradine v.

Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) ("The administrative law judge must …

evaluate the applicant's credibility with great care.  His responsibility is all the greater

because determinations of credibility are fraught with uncertainty…."  (citation omitted)).

More recently, the Social Security Administration eliminated its use of the term

"credibility" and clarified "that subjective symptom evaluation is not an examination of

an individual's character…."  Soc. Sec. R. 16-3p, 2017 WL 5180304, *2 (S.S.A. Oct. 25,

2017) (effective March 28, 2016).

The Social Security Administration uses a two-step process for evaluating an

individual's symptoms.  First, the ALJ must determine whether an individual has a

medically determinable impairment that could reasonably be expected to produce the

individual's alleged symptoms.  *Id.* at *3.  Second, the ALJ must evaluate the intensity

and persistence of the individual's symptoms and determine the extent to which the

individual's symptoms limit her ability to perform work-related activities.  *Id.* at *4.  To

do this, the ALJ must examine the entire case record, including the objective medical

evidence; the individual's relevant statements; statements and other information provided

by medical sources and others; and any other relevant evidence in the record. *Id.* at *4-5.

In addition to all of the evidence, the ALJ should consider several factors:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3). But not every factor will be discussed in every case. If there is no evidence regarding one of the factors, that factor will not be discussed. Soc. Sec. R. 16-3p, 2017 WL 5180304, *8.

In the present case, ALJ Kenyon followed these steps. He first determined that Plaintiff has medically determinable impairments—chronic obstructive pulmonary disease, degenerative disc disease of the lumbosacral spine, degenerative joint disease of the knees, carpal tunnel syndrome, obesity, and depressive disorder—that could reasonably be expected to cause her alleged symptoms.

Turning to step two, ALJ Kenyon acknowledges that his previous decision was reversed by the Court because of his inadequate evaluation of Plaintiff's pain. And, although he gave the Court's concerns "due consideration," he nonetheless concluded

that "the overall evidence of record does not support allegations of disability prior to the Title II date(s) last insured."[3]  (Doc. #7, *PageID* #1901).

The ALJ recognized Plaintiff's testimony regarding her limitations.  *Id*.  For instance, she testified that she has diminished grip strength and reduced manual dexterity. She is unable to lift more than a gallon of milk.  She could not stand or walk for more than fifteen minutes at a time.  Further, she could not sit for more than fifteen minutes at a time.  She has right shoulder pain that is aggravated by lifting her arm.  She also has lower extremity pain and instability.  She has used a cane since 2010 (after her dates last insured).

Although the ALJ (in his previous decision) found that Plaintiff was capable of performing a reduced range of light work, in the present decision, to give Plaintiff "the maximum benefit of doubt with regard to her allegations and subjective complaints," the ALJ reduced Plaintiff's exertional capacity to a reduced range of sedentary work.  *Id.* at 1902.  He found that restricting Plaintiff to a reduced range of sedentary exertion adequately address the location, duration, frequency, and intensity of her alleged symptoms as well as precipitating and aggravating factors—to the extent that the aggravating factors were supported by objective medical evidence and clinical findings before Plaintiff's dates last insured.  He did, however, dismiss her allegation that she could not sit for more than about ten-to-fifteen minutes at a time because "[s]uch a

---

[3] Earlier in his decision the ALJ notes that Plaintiff's case poses "a somewhat unusual situation – the claimant's physical condition has obviously deteriorated in the recent past but because of the added issue of the Title II insured-status eligibility criteria, it is only her condition through the remote date(s) last insured that is relevant."  (Doc. #7, *PageID* #1894).  Accordingly, the ALJ concludes, "much of the medical evidence is not particularly dispositive as to the claimant's alleged disability status."  *Id.*

limitation is simply not plausible – especially on or before the Title II date(s) last insured." *Id.* at 1902.

In an effort to refute "any incapacity to do the reduced range of sedentary exertion," the ALJ provided a long list of bullet points summarizing some of the medical evidence related to Plaintiff's physical impairments.[4]  For instance, the ALJ observed that x-rays in August 2005 showed only mild degenerative disc disease at the L3-4 and L4-5 levels of her lumbar spine.  *Id.* (citing 1F at 46).  In January 2008, Plaintiff had mild osteoarthritis in her right knee.  *Id.* (citing 2F at 191).  X-rays in February 2009 of Plaintiff's left knee were "without radiologic abnormality."  *Id.* (citing 2F at 135).

Plaintiff contends that these points have "little relevance" to her allegations of pain.  But that is not true:  "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult or to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI claim."  Soc. Sec. R. 16-3p, 2017 WL 5180304, at *5 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)).  For example, although an MRI of Plaintiff's left knee showed degenerative joint disease with a meniscal tear in November 2019 (after Plaintiff's dates last insured), an x-ray of her left knee in March 2009 showed no evidence of acute abnormality and only mild osteoarthritis.  (Doc. #7, *PageID* #1902

---

[4] Plaintiff asserts that the ALJ erred in citing some evidence from after her last dates insured.  This argument lacks merit as most of the list concerns medical records prior to her dates last insured.  Further, Plaintiff contradicts herself when she later argues that the ALJ did not include all of the relevant evidence in those bullet points and cites an MRI of Plaintiff's knee from November 2019.

(citing 2F at 300)); (Doc. #9, *PageID* #3844 (citing Doc. #7, *PageID* #s 758-59, 996-97, 1902-03)).

But the ALJ's bullet points are not his only discussion of Plaintiff's impairments before her dates last insured.  When the ALJ initially discussed Plaintiff's severe impairments, he specifically cited evidence from before Plaintiff's dates last insured.  For instance, the ALJ observed that pulmonary function testing in May 2004 showed no evidence of restrictive volumes or obstruction and a chest x-ray in 2004 showed Plaintiff's lungs to be well inflated and clear.  (Doc.#7, *PageID* #1894 (citations omitted)).  However, he also recognized that "upon clinical testing, forced expiratory volume was only 69 percent of predicted value."  *Id.*  Accordingly, he concluded, "While objective evidence of significant pulmonary abnormality is not particularly persuasive prior to the date(s) last insured, there is sufficient evidence to classify chronic obstructive pulmonary disease as a "severe" impairment …."  *Id.*  Likewise, when discussing Plaintiff's knee impairment, the ALJ acknowledged that Plaintiff's left-knee condition "progressively deteriorated to the extent that left knee joint replacement surgery was performed but that was not until September 2017 – more than seven years after the expiration of her insured status …."  *Id.* (citation omitted).

Plaintiff contends that the ALJ did not discuss any of the factors.  Her argument lacks merit.  For instance, the ALJ found that there is no evidence of adverse side effects from treatment or medication that would prevent her working.  *Id.* at 1903; *see* Soc. Sec. R. 16-3p, 2017 WL 5180304, *8.  The ALJ moreover determined that Plaintiff's treatment history (before her dates last insured) was not consistent with a finding of

disability.  He pointed out earlier in his decision that, through her dates last insured, she received only conservative care and treatment for her back problems—primarily physical therapy.  (Doc. #7, *PageID* #s 1898-99).  Similarly, Plaintiff only received conservative care and treatment for her knees through her dates last insured.  *Id.* at 1899.

In sum, ALJ Kenyon evaluated Plaintiff's symptom severity as set forth in the Regulations and Social Security Ruling 16-3p.  He reasonably weighed the evidence and concluded Plaintiff is not under a disability.  Substantial evidence supports his conclusions.  Accordingly, Plaintiff's challenges to the ALJ's symptom-severity determination lack merit.

## IT IS THEREFORE RECOMMENDED THAT:

1.    The ALJ's non-disability decision be affirmed; and

2.    The case be terminated on the Court's docket.

May 27, 2020                                      *s/Sharon L. Ovington*
                                                 Sharon L. Ovington
                                                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).